IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2005 Session

## STEPHANIE ANN TROGLEN v. VINCENT LAMAR TROGLEN

**Appeal from the Circuit Court for Hamilton County**
**No. 03-D-1641      Samuel H. Payne, Judge**

_____

**No. E2004-00912-COA-R3-CV - FILED APRIL 28, 2005**

_____

The issues presented in this divorce case are whether the trial court erred in calculating Mr. Troglen's child support obligation; and whether the trial court erred in awarding Ms. Troglen transitional alimony. The trial court established Mr. Troglen's monthly child support obligation at $755. Additionally, the trial court ordered Mr. Troglen to pay to Ms. Troglen transitional alimony in the amount of $400 per month for a period of five years. We hold that the child support was properly calculated at $755 per month and that the trial court properly awarded Ms. Troglen alimony. However, we modify the alimony award from $400 per month transitional alimony for five years to $400 per month rehabilitative alimony for five years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Christine Mahn Sell, Chattanooga, Tennessee, for the Appellant, Vincent Lamar Troglen.

Richard B. Teeter, Chattanooga, Tennessee, for the Appellee, Stephanie Ann Troglen.

**OPINION**

_Procedural History and Background_

Stephanie Ann Troglen and Vincent Lamar Troglen were married in Hamilton County, Tennessee on October 10, 1993. There was one child born of this marriage, Madison Nicole Troglen (d.o.b. 05/08/94), and one child born to Ms. Troglen prior to this marriage, Steven Bradley Troglen (d.o.b. 05/05/90), whom Mr. Troglen adopted. Following almost ten years of marriage, Ms. Troglen filed a complaint for divorce on September 27, 2003, seeking, among other things, an absolute divorce, "primary possession" of the two minor children, child support, and the issuance of a temporary

restraining order. The trial court entered the temporary restraining order on August 27, 2003. The temporary restraining order further adopted a temporary parenting plan submitted by Ms. Troglen.[1]

Mr. Troglen filed an Answer on September 3, 2003, and a hearing took place on the restraining order on September 4, 2003.[2] The trial court entered an order following the testimony of the parties whereby the minor children were allowed to remain in the marital residence and Mr. and Ms. Troglen were to rotate residing in the marital residence on an alternating week basis. Finally, the trial court "mutually enjoined" the parties from calling each other, following and harassing each other, and from coming about the marital residence when it was not his/her week in the residence.

On December 5, 2003, Ms. Troglen filed a motion requesting, *inter alia*, that Mr. Troglen pay temporary support for her and the minor children pending the divorce trial. On December 22, 2003,[3] following the argument of counsel and testimony of the parties, the trial court determined:

> that the parties have been sharing the children on alternate weeks and that the Plaintiff, Stephanie Troglen, has been receiving the sum of $120.00 as temporary support for each child and the same amount for herself through December 2003, and that said amounts have each increased to $122.00 per month, or a total of $366.00 per month . . .

Further, the trial court ordered, in pertinent part:

> Defendant shall continue to have the government pay to Plaintiff all monies he receives on behalf of the children or if received by him through accounts for the children, shall pay the same ($244.00 per month) to Plaintiff as child support commencing January 5, 2004 and each month thereafter until this matter is fully tried.

> Plaintiff, as partial spousal support, shall continue to receive her social security payment of $122.00 per month or if received by the Defendant shall be turned over to her, plus no later than January 10, 2004, Defendant shall pay to the Plaintiff the sum of $500.00 as

---

[1] The Restraining Order signed by the trial court and entered on August 27, 2003, stated, among other things, that Mr. Troglen be "restrained from interfering with Plaintiff's possession of your children, except to visit with the children at times or places agreeable to you and Plaintiff, and you shall comply with the terms of the Temporary Parenting Plan attached to the Complaint, pending further orders of the Court." However, the record does not contain a Temporary Parenting Plan attached to the Complaint.

[2] The record does not contain a transcript from this hearing, a substantially verbatim recital, nor a statement of the evidence.

[3] The record does not contain a transcript from this hearing, a substantially verbatim recital, nor a statement of the evidence.

additional child/spousal support for the period through January 27, 2004.

(Paragraph numbering in original omitted).

On January 27, 2004, following the argument of counsel, testimony by the parties and testimony by the minor children, *in camera*,[4] the trial court ordered, in pertinent part, as follows:

The Plaintiff shall be the primary residential parent and the Defendant shall be the secondary residential parent of said minor children. . . . Defendant shall pay child support to the Plaintiff in the total amount of $755.00 per month . . . The support shall be paid by Plaintiff receiving directly from Social Security the benefit checks for the children, which are now $184.00 each, and the Defendant paying directly to Plaintiff an amount sufficient to total $755.00 . . .

[I]t is further ordered that as in solido alimony, which shall not be affected by any subsequent marriage of the Plaintiff, Defendant shall pay to Plaintiff $400.00 per month for a period of five full years, to commence February 5, 2004, and on the fifth day of each month thereafter, until a total of $24,000.00 has been paid at which time this obligation shall end . . .

Following the disposition at trial and the entry of the final decree, Mr. Troglen's new counsel filed a Motion for Alteration or Amendment and/or Relief from Judgment or Order[5] wherein she argued in pertinent part that Mr. Troglen:

respectfully requests the Court to re-calculate his child support obligation for two children based upon the Court's inclusion of Defendant's monthly Social Security benefits in determining that his child support obligation is $755 per month, which is disallowed as a matter of federal law.

---

[4] There is no transcript or statement of the evidence from the *in camera* proceedings.

[5] Upon Mr. Troglen's motion, the trial court ordered, *inter alia*, on May 21, 2004, that the alimony award was incorrectly called *in solido* and that the final decree should be amended to substitute the term "transitional alimony" in the amount of $400.00 per month for five years.

-3-

The trial court ruled on this matter on May 21, 2004,[6] and stated in pertinent part, "[t]he Court reaffirms the amount of child support ordered at $755.00 per month but is unable to say whether the Defendant's Social Security benefits were included in the calculation or if so, whether that affects the amount of the calculation." Mr. Troglen appeals the decision of the trial court.

*Issues for Review*

The following issues are presented for our review, which we restate:

1. Whether the trial court erred in calculating Mr. Troglen's child support obligation.

2. Whether the trial court erred in awarding Ms. Troglen transitional alimony.

*Standard of Review*

This is a non-jury case and, accordingly, our review is de novo upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) and Tenn. R. App. P. 13(d). We must, however, presume the trial court's factual finding to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

*Analysis*

The first issue we address is whether the trial court erred in calculating Mr. Troglen's child support obligation. Mr. Troglen argues that the trial court incorrectly calculated his child support obligation at $755.00 per month, and then deducted the $368.00 the children receive from Social Security due to Mr. Troglen's disability and ordered Mr. Troglen to pay the remaining balance, $387.00 per month, to Ms. Troglen. Mr. Troglen asserts that his sole source of income is a combination of benefits[7] he receives from the Veteran's Administration and Social Security due to a disability. Mr. Troglen argues that his benefits should be excluded from the calculation of his "gross income" in determining his child support obligation pursuant to the definition of "gross income" as set forth in the Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(1) (2004), which states:

> (3) Gross Income (a) Calculation of Gross Income.
> 1. Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to the following: wages, salaries,

---

[6] It is unclear from the record whether there was a hearing regarding the Motion for Alteration or Amendment and/or Relief from Judgment or Order. There is no transcript in the record or statement of the evidence regarding this motion.

[7] Mr. Troglen's income is a combination of $2,172.00 per month from Veteran's Benefits, $662.00 per month from Social Security benefits, and $147.00 per month in Marine Child Care for a total of $2981.00 per month.

commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment.

Further, Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(4)(i) states, "[t]o the extent Social Security Title II benefits received by a child on the obligor's account meet the support obligations ordered to be paid by the obligor for the child, these benefits shall be counted as child support payments."  Finally, Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(c)(2) states, with regard to those sources of income not included as gross income, in pertinent part:

> 2. Benefits received from means-tested public assistance programs otherwise exempt by federal law or regulations such as Families First, Aid to Families with Dependent children (AFDC) and Food Stamps or Supplemental Security Income (SSI).

Mr. Troglen argues that the record supports the view that both his Veteran's Disability Benefits as well as his monthly income from the Social Security Administration are "means tested public assistance" and therefore he has no income from which to calculate and order child support other than the benefits Ms. Troglen already receives from the Social Security Administration.  Mr. Troglen, in making this argument, relies on a case previously decided by this court, *State ex rel. Raybon v. McElrath*, No. M2001-01295-COA-R3-JV, 2003 WL 22401276, Tenn. App. LEXIS 737 (Tenn. Ct. App. M.S., filed Mar. 19, 2002) *no appl. perm. filed*.  We respectfully disagree with Mr. Troglen.

The trial court enjoys broad discretion in setting child support.  *State ex rel. Coleman v. Clay*, 805 S.W.2d 752, 755 (Tenn. 1991).  Accordingly, we review child support decisions using the abuse of discretion standard of review.  *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  The abuse of discretion standard requires us to consider the following:

> (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed).

*Id.* We will set aside a discretionary decision if it rests on inadequate evidentiary foundation or if it is contrary to the law, however; we will not substitute our judgment for that of the trial court simply because we might have chosen another alternative. *Id.*

This court has previously stated in *Kaatrude*:

> The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources. *See Shell v. Law*, No. 03A01-9608-CV-00251, 1997 WL 119581, at *4 (Tenn. Ct. App. March 18, 1997), perm. app. dismissed (Tenn. Jan. 29, 1998). The statutes and regulations promote this goal by requiring the courts to set child support using guidelines developed by the Tennessee Department of Human Services to promote both efficient child support proceedings and dependable, consistent child support awards. *See* Tenn. Code Ann. § 36-5-101(e) (Supp. 1999); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b), (c) (1994). . . . For the purpose of setting child support, a noncustodial parent's net income is generally established by introducing pay stubs, personal tax returns, or other credible records evidencing income. *See Kirchner v. Pritchett*, No. 01A01-9503-JV-00092, 1995 WL 714279, at *2 (Tenn. Ct. App. Dec. 6, 1995) (No Tenn. R. App. P. 11 application filed).

*Id.* at 248-249.


Mr. Troglen's reliance upon *McElrath* is misplaced. In *McElrath*, this court held that "the benefits paid to disabled adult children of deceased disabled workers under Section 402(d) are means-tested public assistance benefits for the purpose of Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)." *State ex rel. Raybon v. McElrath*, No. M2001-01295-COA-R3-JV, 2003 WL 22401276, Tenn. App. LEXIS 737 (Tenn. Ct. App. M.S., filed Mar. 19, 2002) *no appl. perm. filed*. *McElrath* is distinguishable from the case *sub judice* in that Mr. Troglen does not purport to be, nor does the record support that he is, a disabled adult child of a deceased disabled worker pursuant to 42 U.S.C.A. § 402(d).

Mr. Troglen argues that his benefits are "means-tested public assistance benefits" and, therefore, not subject to review in calculating his gross income for purposes of setting his child support obligation. Unfortunately for Mr. Troglen, most, if not all of his argument is outside the record. There were at least three hearings in this divorce case and a transcript is available from only one of those hearings. The record is very limited regarding Mr. Troglen's income and his sources of income. The only examples in the record where Mr. Troglen's income is mentioned include the Order from the hearing on January 13, 2004, wherein the trial court ordered Mr. Troglen to pay "all monies he receives on behalf of the children or if received by him through accounts for the children,

shall pay the same ($244.00 per month) to Plaintiff as child support commencing January 5, 2004 and each month thereafter until this matter is fully tried" and "[d]efendant shall pay to Plaintiff the sum of $500.00 as additional child/spousal support for the period through January 27, 2004."[8] The record further contains an income and expense statement filed with the trial court on January 23, 2004, which lists Mr. Troglen's income as, "[d]isability monthly $2172.00; [m]arine child care monthly $297.00; [s]ocial [s]ecurity monthly $662.00." Also, during opening statements at the trial on January 27, 2004, counsel for Mr. Troglen stated to the trial court in pertinent part:

| | |
|---|---|
| Mr. Beard: | He's collecting disability right now of approximately $2400 a month, and that's the income. . . . She also - - the court ordered her to get the checks for the children for the time being during the pendency of proceedings, that's $120 per child. . . but the children's income increases to $180 a month per child. So that's another issue I think the Court may want to recall, that's $360. |
| The Court: | I had the children at nine and 13, one's adopted. He draws really 100-percent VA disability. |
| Mr. Beard: | Yeah. |
| The Court: | He takes, I've got here, 12 pills a day. |
| Mr. Beard: | Yeah, he's sadly disabled. |
| The Court: | He sells vitamins or something for body building, plus social security. |
| Mr. Beard: | Yeah, he gets Social Security, Your Honor, 662 a month. So he has a total of about $3,000 in disability and Social Security a month that he's getting. That's separate from the two checks of 180 apiece that the children get, and that's directly in their names. |
| The Court: | Is that from the VA? |
| Mr. Teeter: | You have a statement, do you not? |
| The Court: | Who is that from? |

---

[8] The record does not contain a transcript of these proceedings, a substantially verbatim recital, nor a statement of the evidence.

Mr. Beard:     Yeah.  I can introduce the statement, Your Honor, which I think may help the court a little bit.

. . . .

The direct examination of Mr. Troglen by his counsel:

Mr. Beard:     You're Marty Troglen, obviously.  I think we've done a fairly good job, Marty, of explaining what your income is and - - May I approach him, Your Honor?

The Court:     Sure.

Mr. Beard:     You agree with the figures on your income and expense statement?

Mr. Troglen:   Yes, sir, I do.

Mr. Beard:     Okay. Could you hand that to the Judge?

Mr. Troglen:   (Complies with request of counsel.)

In the court's memorandum opinion from the hearing on January 27, 2004:

The Court:     Okay.  The child support payments, the 184 should go directly to her and the VA should be notified they go to her.  And in addition to the child support, you should pay $387 a month child support based on your income.  That brings it up to 755 is what the Federal Statute say he should pay.  See, we don't fix child support anymore, the Government does it for us. We've got a chart that we have to go by, look at what he makes, what you make, then we write down the figures.

There is no evidence in the record regarding Mr. Troglen's disability, except for the fact that he has one. The record is silent as to his work history, and contains no explanation regarding the monthly payments he receives from the Veteran's Administration or Social Security except that these are "disability payments."  It appears from the transcript from the January 27, 2004, hearing, that perhaps evidence regarding Mr. Troglen's monthly benefits was introduced at a previous hearing. Mr. Troglen offered no evidence at the hearing on January 27, 2004, regarding the classification of

-8-

the benefits he receives from the government, nor did he argue that some, if not all of those benefits were "means-tested public assistance benefits" and, therefore, not subject to review for the purpose of calculating child support. The transcript from the January 27, 2004, hearing does not include an argument with regard to the calculation of Mr. Troglen's child support obligation or that perhaps some if not all Mr. Troglen's benefits should be exempt from consideration in the matter. The first time Mr. Troglen raises the classification of his benefits as an issue in this case is in his Motion for Alteration and/or Relief From Judgment or Order.

As Appellant, Mr. Troglen, had the primary responsibility of preparing the transcript or statement of evidence. Tenn. R. App. P. 24. Additionally, the appellant has the primary burden of seeing that a proper record is prepared on appeal and filed in this Court. Tenn. R. App. P. 24; *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). When an appellant fails to provide a factual record on appeal, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Craft v. Forklift Sys., Inc.*, No. M2002-00040-COA-R3-CV, 2003 WL 21642767, at *2, 2003 Tenn. App. LEXIS 491 at *4 (Tenn. Ct. App. M.S., filed July 14, 2003) *no appl. perm. filed.* Mr. Troglen sets forth many facts in his brief to support his argument regarding the classification of his monthly benefits and his argument and that the trial court erred in setting his child support obligation at $755.00 per month. However, these facts cannot be considered as they are not part of the record. We do not find that the trial court abused its discretion in setting Mr. Troglen's child support obligation at $755 per month. There was a sufficient evidentiary foundation for the award, the trial court properly applied the appropriate legal principles and the trial court's decision was within the range of acceptable alternatives. Therefore, we affirm the trial court's setting of Mr. Troglen's monthly child support obligation as $755.00 per month.

The second issue Mr. Troglen raises on appeal is whether the trial court erred in awarding Ms. Troglen transitional alimony in the amount of $400.00 per month for a period of five years. There are no hard and fast rules for spousal support decisions. *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration, based upon the particular facts of each case. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn Ct. App. 1999). As an appellate court, we are disinclined to second guess a trial court's alimony decision unless it is not supported by the evidence or is contrary to public policies reflected in the applicable statutes. *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002). Our role is not to fine-tune a trial court's spousal support award, *Davidson v. Davidson*, No. M2001-01830-COA-R3-CV, 2002 WL 31769205, 2002 Tenn. App. LEXIS 829, at *12 (Tenn. Ct. App. Filed Dec. 11, 2002) *no appl. perm. filed,* but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

There are several separate classes of spousal support in Tennessee, including long-term periodic spousal support (alimony in futuro), alimony in solido, rehabilitative spousal support, and transitional spousal support. Tenn. Code Ann. § 36-5-101, et seq. Tennessee law recognizes a statutory preference for rehabilitative spousal support and transitional spousal support. Tenn. Code Ann. § 36-5-101(d)(1); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003); *Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn. 2000). This statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991).

With respect to rehabilitative alimony,

> It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(C).

> Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. . . . Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceedings where spousal support may be awarded, such as a petition for an order of protection.

Tenn. Code Ann. § 36-5-101(d)(1)(D).

Under Tenn. Code Ann. § 36-5-101(d)(1), once a trial court has determined a party to be economically disadvantaged relative to his or her spouse, the court must determine the nature, amount, duration, and manner of payment of an alimony award. *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003). As our Supreme Court has recently stated:

> A trial court must consider every relevant factor in Tennessee Code Annotated section 36-5-101(d)(1) (2001) to determine the nature and

extent of support. The two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001).

The legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse. *See Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn. 2000). However, trial courts should not refrain from awarding long-term support when appropriate under the enumerated statutory factors. *Robertson,* 76 S.W.3d at 341-42. "The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998).

*Bratton v. Bratton,* 136 S.W.3d 595, 604-05 (Tenn. 2004).

The statutory factors required to be considered by the trial court are set forth in Tenn. Code Ann. § 36-5-101(d)(1)(E) as follows:

(i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii) The duration of the marriage;

(iv) The age and mental condition of each party;

(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

As noted above, the threshold question for a court to consider in determining which type of alimony is appropriate is whether one of the spouses is economically disadvantaged relative to the other.

In the case *sub judice*, in its memorandum opinion, the trial court awarded Ms. Troglen alimony in the amount of $400 per month for a period of five years. However, when the trial court entered the final decree, the alimony was referred to as alimony "in solido." Mr. Troglen filed a Motion for Alteration or Amendment and/or Relief from Judgment or Order, wherein he argued, among other things, that the alimony award should not have been characterized as "in solido." The trial court entered an order on May 3, 2004, substituting the term "transitional" for the term "in solido." Based upon the testimony of Ms. Troglen at trial, however, and the statutory definitions, the class of alimony appropriate in this case is rehabilitative alimony rather than transitional alimony. Ms. Troglen testified that she currently earns $9.40 per hour and works 40 hours per week at her current place of employment. Therefore, she earns approximately $1,600.00 per month or $19,200.00 per year.[9] Additionally, she testified that she has a 9th grade education and would like to earn her high school diploma or general equivalency diploma and take some computer and business classes on a college level which would assist her in her current job or help her find a new higher paying job. Ms. Troglen testified that she would need approximately five years to complete her high school work and further her education through college level courses in order to rehabilitate herself and increase her earning capacity. From Ms. Troglen's testimony, it is clear that she was a proper candidate for rehabilitative alimony rather than transitional alimony. Her plans to further her education so as to improve her earning capacity are consistent with the statutory definition of rehabilitative alimony in that she should be "able to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce

_____

[9] There is no income and expense statement in the record for Ms. Troglen. It would appear from the transcript of the hearing on January 27, 2004, that she was testifying from one, however, one was never introduced into evidence.

-12-

to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-101(d)(1)(C). Accordingly, we modify the alimony from transitional alimony to rehabilitative alimony.

Mr. Troglen argues that because the trial court failed to make any findings of fact regarding the award of transitional alimony, it is incumbent upon this court to independently review the record to determine whether the alimony award was appropriate. Further, Mr. Troglen asserts that the two most important factors for the court to consider are the need of the obligee spouse and the ability of the obligor spouse to pay alimony. We agree with Mr. Troglen on these points, however, we disagree with Mr. Troglen's arguement that the record is devoid of any evidence regarding Ms. Troglen's need for alimony and Mr. Troglen's ability to pay $400 per month in alimony.

This case presents a difficult and confusing record for review. There were at least two hearings prior to the divorce trial from which there is no transcript. At the hearing on December 22, 2003, the court awarded Ms. Troglen, "the sum of $500.00 as additional child/spousal support for the period through January 27, 2004. . . . This cause is set for trial on January 27, 2004 on all issues and if for any reason trial is passed from said date, a hearing on the continuance of temporary child/spousal support shall continue from month to month at the level set forth above." The trial court first entertained the idea of alimony at this December 22, 2003, hearing. Unfortunately, there is no record from that proceeding. While the record before this Court leaves many gaps and unanswered questions, one thing is clear and that is the fact that neither party will be able to maintain the lifestyle enjoyed before the divorce, which does not appear to have been extravagant. Unfortunately, two households cannot be maintained as inexpensively as one. Both parties will very likely have to live on less income than they had during the marriage. This is the economic reality of divorce. Although we cannot prevent it, we can endeavor to make the result as fair as possible to both parties.

From the record, it is clear that Ms. Troglen is an economically disadvantaged spouse relative to Mr. Troglen. Mr. Troglen receives $2,981 per month in tax-free government benefits and Mrs. Troglen receives approximately $1,600 in taxable monthly income. Ms. Troglen was named the primary caretaker of the two children following the trial and has substantially more time with the children than Mr. Troglen. Prior to trial, the parties were rotating time with the children equally on a one week schedule. While Ms. Troglen failed to submit an affidavit of income and expenses at trial, she did, however, testify as to some of her expenses at trial. For example, Ms. Troglen testified that her monthly rent was $420, but she was able to re-negotiate this amount to $410 per month for a one bedroom apartment. Ms. Troglen testified that her daughter sleeps with her in the one bedroom and that her son sleeps on the sofa. She further testified that she hopes to move into a two bedroom apartment as soon as she is able to do so financially. According to her testimony, Ms. Troglen spends about $140 per month on laundry for herself and her two children because she does not have a washing machine and dryer and must do her laundry at a laundromat. She testified that

she spends approximately $500 per month for food for herself and her two children during a time that she only had them every other week. Ms. Troglen further testified that her automobile payment is approximately $270 per month. Ms. Troglen listed approximately $3,500 in unpaid medical bills for the children she has been paying off in monthly installments and the balance of which she still owes one half.[10] The following sets forth the income of each party once child support and alimony are added and subtracted:

| | **Mr. Troglen** | **Mrs. Troglen** + 2 children |
|---|---|---|
| **Income** | $2, 981 (tax free) | $1,600 (taxable) |
| **Child Support** | (387) | 755 |
| **Alimony** | (400) | 400 |
| **Net:** | $2,194 | $2,755 |

There is nothing in the record to indicate that either party has living expenses that are disparate or excessive. Having considered all the factors as set forth in Tenn. Code Ann. § 36-5-101(d)(1)(E), we are of the opinion that Ms. Troglen has demonstrated her need for alimony and that Mr. Troglen has the ability to pay alimony. Additionally, we recognize that the trial court had broad discretion in determining whether Ms. Troglen needed alimony and in deciding what amount and for what period of time. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). The decision of the trial court is supported by the evidence and not contrary to public policy. *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002). Accordingly the award of alimony to Ms. Troglen in the amount of $400 per month for a period of five years is affirmed as modified to "rehabilitative" alimony. As we have modified the alimony from transitional to rehabilitative, it is important to note that an award of rehabilitative alimony, remains "in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." *Crabtree v. Crabtree*, 16 S.W.3d 356, 359 (Tenn. 2000).

For the aforementioned reasons, the judgment of the trial court is affirmed as modified, and remanded to the trial court for collection of costs below. Exercising our discretion, costs on appeal are assessed to the Appellant, Vincent Lamar Troglen and his surety, for which execution may issue if necessary.

_____

---

[10] The trial court equally divided between the parties the remaining balance on the medical bills.

Sharon G. Lee, J.